UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNEST KELLY HOLESTINE,

    Plaintiff,

    v.

JOE McGRATH; RICHARD KIRKLAND, P. DILLARD, D. R. SMITH, M. J. NIMROD, C. PATTON, D. A. CARMICHAEL, R. TAYLOR, J. VOGT, J. ANDERSON, K. RAMOS AND R. WILTSE,

    Defendants.

No. C 04-2583 PJH (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights case filed pro se by a state prisoner. Plaintiff alleges that prison officials were deliberately indifferent to his health and safety in violation of the Eighth Amendment. He seeks only monetary damages, having deleted his injunctive relief claim in response to a motion to dismiss. All defendants except McGrath and Vogt, who have not been served, have moved for summary judgment.[1] Plaintiff has opposed the motion and moved to strike defendants' declarations in support of their motion, and defendants have filed a reply. The motion for summary judgment will be granted.

**BACKGROUND**

Plaintiff was assigned to cell B1-102 in the Psychiatric Services Unit ("PSU"), a Secured Housing Unit ("SHU"), of Pelican Bay State Prison ("PBSP") on November 30,

---

[1] Defendants McGrath and Vogt have not been served. Plaintiff received notice of this from the returns of service and the notation to that effect in the motion for summary judgment filed by the other defendants. McGrath and Vogt will be dismissed for failure to obtain service. *See* Fed. R.Civ.P. 4(m). The word "defendants" refers to only the moving defendants when used hereafter.

1  2003. He alleges that while housed in cell B1-102, he was subjected to harm because of a
2  defective plumbing system which allowed waste water and sewage flushed from the toilet in
3  the cell next to him to pass through the drain and surge up into his toilet bowl. This
4  plumbing defect is referred to by the parties as a "backflush." Plaintiff also alleges that he
5  was forced to clean his cell and the toilet, under threat of discipline, with his bare hands
6  and one of two shower towels allotted him, and was denied supplies needed to disinfect his
7  toilet bowl so as to protect himself from serious disease. He alleges that as a result of the
8  actions of defendants he contracted at least two bacterial infections, and was unreasonably
9  exposed to the hepatitis A virus. He asks for compensatory, nominal and punitive
10 damages.

11       There are several defendants, all presently or formerly employed at PBSP: The
12 former Warden (Joe McGrath); the Chief Deputy Warden (Richard Kirkland); two Associate
13 Wardens (P. Dillard and D.R. Smith); a Correctional Counselor (M.J. Nimrod); a
14 Correctional Captain (C. Patten); a Correctional Lieutenant (D.A. Carmichael); two
15 Correctional Sergeants (R. Taylor and J. Vogt); and three Correctional Officers (J.
16 Anderson, K. Ramos and R. Wiltse).

## DISCUSSION

### I.  Plaintiff's Motion to Strike

19       In support of their motion for summary judgment defendants submitted the
20 declaration of Dayton Conover, the Correctional Plant Manager and an Associate Warden
21 at PBSP, he which he described defendants' efforts to remediate the backflush problem at
22 PBSP by 1) requesting funds to make repairs to the plumbing system, and 2) sending
23 plumbers to reduce the water pressure in the toilets, which ameliorated the problem to
24 some degree. Defendants also submitted the declaration of Mike Smelosky, Warden of
25 Health Care Operations at Pelican Bay State Prison, who explained that the reason for
26 denying plaintiff access to cleaning tools (mops and toilet brushes) is that such tools can be
27 modified for use as dangerous weapons. Additionally, defendants' attorney, by declaration,
28 provided a copy of the transcript of a deposition of the plaintiff, taken on December 4, 2006,

2

and certain records of prison authorities, authenticated by the custodian of the records from Mule Creek State Prison, where plaintiff is currently housed.

Plaintiff moved to strike the declarations filed by defendants, claiming that they contained statements not based on personal knowledge. Plaintiff also challenged the authenticity of the deposition transcript because corrections requested by him were not made and because the reporter's certificate was unsigned. In response, defendants have filed a signed certified copy of the deposition transcript which includes an appended copy of plaintiff's requested corrections to the transcript.

In a ruling issued May 14, 2007, the court determined that plaintiff's contentions went only to portions of each declaration and would be considered in conjunction with the motion for summary judgment. Defendants have remedied the problem with the deposition transcript, and the court will consider only those portions of the declarations which are in proper form. The motion to strike is DENIED.

**II.     Defendants' Motion for Summary Judgment**

    **A.     Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to

3

show a genuine issue of material fact, the moving party wins. *Id.*

**B.     Relevant Law**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *Farmer*, 511 U.S. at 832; *see also Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)). The necessary state of mind in prison condition cases is deliberate indifference, which is equivalent to the standard for criminal recklessness, *i.e.*, the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

**C.     Discussion**

Defendants contends that they are entitled to summary judgment because there is no genuine issue of material fact regarding their contention that the backflush problem and the cleaning supply policy at PBSP do not amount to an objectively serious risk to plaintiff's health and safety, and that there is no genuine issue of material fact that plaintiff did not suffer any physical injury as a result of the backflush problem.

**1.     The Evidence**

Defendants' motion is supported by the declarations described above in the section addressing the motion to strike. Plaintiff's opposition is supported by the following items.

Plaintiff provides a work order report which he describes as showing "at least over 300 work orders completed by the institution plumbers related to the toilet backflushing all

4

1  over the Pelican Bay prison complex." Pl.'s Exhibits in Supp. of Opp. to Mot. Summ. J., ex.
2  C. He has also filed an affidavit of a fellow inmate stating that similar problems at Ironwood
3  State Prison in Blythe, California, were fixed several years ago after civil litigation, Heartsill
4  Decl. at 2, and an exhibit which he says indicates the cost of repairs at Ironwood was
5  $527,000, Pl.'s Exhibits in Supp. of Opp. to Mot. Summ. J., ex. D.

6  Plaintiff challenges defendants' declaration that the water at Pelican Bay contains a
7  disinfectant residual, and offers evidence purporting to show that if the water does contain
8  that particular disinfectant, its effectiveness depends on the concentration of the
9  disinfectant, its contact time, the turbidity of the water, and the water temperature. *Id.* at
10 ex. E (printout from site of Government of South Africa). Similar evidence is offered to
11 show that a causal connection can be established between human fecal contamination of
12 drinking water and an outbreak of infectious disease, even in chlorine treated drinking
13 water, *id.* at ex. F (article from newsletter of the Cooperative Research Centers of the
14 Australian government), and that hepatitis A can be spread from the stool of one person to
15 the mouth of another, *id.* at ex. G (Merck Manual of Medical Information, Home Edition).

16 Plaintiff offers the following medical records which he contends demonstrate his
17 injuries: Exhibit J is an outpatient report showing that in January of 2001 his prostate was
18 swollen and tender, and that he had cramps, nausea and vomiting, which may have been
19 the result of food poisoning; the report indicates he was examined for pain in the lower left
20 quadrant. Lab tests showed certain prostate specific antigens were found "out of range"
21 and that he was referred to urology for evaluation in February of 2001, that the referring
22 physician found from family history that the patient had a risk of prostate carcinoma, and
23 that a urinalysis showed mucus was "Out of Range: Moderate." Exhibit N is an April, 2001,
24 clinic report relating that plaintiff has suffered from "extensive" psoriasis and "continues to
25 have some involvement of his scalp, face, ears, and elbows," but "denies any involvement
26 of his genital skin or his joints or nails at the current time."

27 An April 2004 report indicates he was suffering pain in his liver and was referred to
28 the Hepatitis C Committee, and was still suffering pain in July and August of 2004. *Id.* at

1  ex. K.  That exhibit also contains physician's orders in December of 2004 for medication for
2  his scalp and "affected areas," apparently associated with the psoriasis which he alleges
3  was affected by the unsanitary prison conditions.  Exhibit L is a Hepatitis Committee Patient
4  Profile finding in 2003 that plaintiff "does not meet criteria" and an April, 2004, lab test
5  showing HCV RNA, Quant, BDNA was "Out of Range".

Exhibit M contains the results of abdominal sonograms in 1998 and 2006 showing no significant abnormality of the abdomen except for an enlarged spleen.

**2.    Analysis**

There is no dispute as to the nature of the backflush problem, or that it persisted from November 30, 2003, the date that plaintiff was assigned to cell B1-102, until plaintiff was moved out of that cell in August 2004.  In his declaration, Dayton Conover, Correctional Plant Manager at PBSP, attests that there was a defect in the design of the plumbing when the prison was opened in 1990, and that the plumbing defect has not been corrected. Conover states "all the inmate cell toilets were connected to half baffle fittings" which "are not tall enough to prevent wastewater flushed from one cell toilet from flowing back into the toilet of the adjacent cell."  Conover Decl. at 2.  According to Conover, "[t]he half baffles fittings have not always performed satisfactory [*sic*] at Pelican Bay.  As a result, the Department of Corrections and Rehabilitations revised the Design Criteria Guidelines to require a taller baffle in the fitting … [and] [i]n January 2004, I officially requested funds to repair this problem. … The project was approved pending funding in March 2004 … . Currently, the toilet backflush repair project at Pelican Bay has been approved but not yet funded."  *Id.* at 3.

It is also undisputed that plaintiff was not allowed gloves, brushes or mops with which to clean the toilet without coming in contact with it.  According to the Associate Warden of Health Care Operations at Pelican Bay, whose declaration was submitted by the defendants, Pelican Bay Operation Procedure No. 222 ("O.P. 222") "authorizes 1 spoonful of cleanser to be issued on a wet rag or paper towel once a week.  Cleaning devices such as rubber gloves, mops, toilet brushes, have proven over the years to be a security risks

6

1 [*sic*] since they can easily modified [*sic*] into weapons.  As such, O.P. 222 does not allow
2 these cleaning devices to be given to the inmates." Smelosky Decl. at 2.[2]

3       Although the above facts are undisputed, the parties do dispute whether the
4 backflushing problem was, objectively, sufficiently serious to meet the first prong of an
5 Eighth Amendment conditions of confinement claim.  *See Farmer*, 511 U.S. at 834.

6       Defendants claim the backflushing was not serious because "the wastewater and
7 materials that would show up in his toilet when his neighbor flushed, would never overflow
8 out of his toilet bowl," a fact plaintiff admitted, McDonough Decl., ex. A (plaintiff's
9 deposition) (hereafter "Holestine dep.") at 69, and because flushing the toilet a "couple of
10 times" would cause the wastewater to go down the drain," Conover Decl. at ¶ 5.  Plaintiff
11 states, however, that he and his neighbor flushed the toilet bowl contents back and forth
12 five or six times before the contents eventually went down the drain, and that there were
13 times when he was not in his cell to flush the toilet, so the contents remained in the toilet
14 and made the cell stink.  Holestine dep. at 69.

15       Defendants claim that the dispatch of a plumber to reduce the water pressure in
16 cells B1-102 and B1-103 (the neighboring cell) provided a temporary resolution to the back-
17 flushing problem.  At deposition, however, plaintiff testified that although lowering the water
18 pressure "helped a little bit," it did not fix the problem, Holestine dep. at 73, and the
19 defendants' evidence is only that lowering the water pressure "will reduce the overflow of
20 wastewater into the adjacent cell toilet," Conover Decl. at 3, not eliminate the backflush.

21       Defendants claim that even if plaintiff is correct that the remediation efforts it has
22 undertaken are ineffective, there is no risk to plaintiff's health because the water used in the
23 toilets contains a disinfectant, liquid chlorine.  The Correctional Plant Manger, who is in
24 charge of maintenance and repair of the prison infrastructure, states that "[t]he water used
25 to flush all the toilets at Pelican Bay is potable water.  In California, all potable water must

---

[2] It is interesting to note, however, that according to the declarations of two other inmates the prison does issue a wooden scrub brush with a five-foot wooden handle, liquid disinfectant and latex gloves to inmates to clean section showers.  Decl. Nelson at 3; Decl. Rankine at 2.

7

1 contain a disinfectant residual throughout the entire water system. The disinfectant used
2 by the Crescent City Water Department is sodium hypochloride, also known as liquid
3 chlorine." Conover Decl. at 4.

4     For purposes of deciding whether the situation was objectively sufficiently serious
5 the court will treat plaintiff's version of disputed facts as true. Even so, the evidence is that
6 the problem was ameliorated somewhat by turning down the water pressure, that flushing
7 the toilet a number of times would clear it, and that the toilets used treated water. And as
8 defendants point out, the situation was no different from that of an inmate in a two-person
9 cell who had to clean a toilet that had been used by his cellmate. For these reasons it
10 would appear that the situation was not objectively sufficiently serious to constitute an
11 Eighth Amendment violation, but also bearing on this point are plaintiff's claims regarding
12 his own injuries – that is, if he can show that the backflush problem caused him injury, that
13 would bear on whether the backflush problem was objectively sufficiently serious.

14     Plaintiff has alleged that he contracted at least two serious bacterial infections from
15 his cell toilet. The first was in January of 2001, when he became very ill and was bedridden
16 for over ten days suffering severe stomach cramps, fever, diarrhea and blood in his stools.
17 Opp. to Mot. Summ. J., pl.'s decl. of disputed facts at 20, ¶ 64. This was, however, before
18 plaintiff was placed in cell B1-102, and, therefore, could not have been proximately caused
19 by the backflushing problem.

20     The second illness was in April of 2004 when he experienced symptoms which were
21 consistent with gastroenteritis. *Id.* at 21, ¶ ¶ 68-69. Gastroenteritis can be caused by
22 bacterial, viral and/or parasitic infections that are commonly spread by drinking water
23 contaminated with the feces of another person, he says, referencing his exhibit G at 514, a
24 Merck Manual of Medical Information. Pl.'s Exhibits in Supp. of Opp. to Mot. Summ. J., Ex.
25 G at 514. Plaintiff states he was sick for ten days, but the doctor did nothing for him.
26 Plaintiff's exhibit K, "Interdisciplinary Progress Notes" dated April 20 and 21, 2004, indicate
27 plaintiff asked to be examined because of pain in his liver, and that on April 21 he was
28 referred to the Hepatitis C Committee to determine if he needed an abdominal ultrasound

1  or GI consult, and Motrin was prescribed. *Id.* at ex. K.  The notes also indicate that his lab

2  results, included as exhibit L, were examined on April 20.  *Id.*  Exhibit L shows regular

3  reports on blood tests, including viral, enzyme, and hormone levels associated with

4  Hepatitis, beginning in 1998 and ending on April 7, 2004.  No additional medical reports

5  have been provided by either party related to the April 2004 incident.

6        Defendants point out that plaintiff conceded at his deposition that he does not know

7  what kind of illness he had.  McDonough Decl., Ex. A at 94.  Plaintiff says he "know[s] that

8  there's many of – a whole variety – a whole slough of diseases that you could catch from

9  exposure to human waste or even a sewage that is festering in the drain.  So I knew there

10 is all kinds of stuff I could have caught."  *Id.* at 97.  But there is no evidence that he did

11 catch any of them from the toilet.  Plaintiff's evidence indicates that disease may be

12 transmitted through chlorinated drinking water tainted with fecal matter.  There is no

13 evidence, however, that he ingested any water tainted with fecal matter; in fact, plaintiff

14 does not make this claim. And, according to plaintiff's deposition testimony, he was always

15 very careful not to allow water to splash his rectum when he used the toilet because he

16 believed that was the cause of his 2001 illness.  *Id.* At 95.  He himself attributes his liver

17 pain to stress and Hepatitis C.  *Id.* at 97.

18       Plaintiff asks the court to infer from this testimony, the general publications about the

19 transmission of diseases, and the Interdisciplinary Progress Notes that his abdominal pain

20 was caused by being forced to clean out his toilet.  That is simply not a fair inference from

21 the evidence he has presented, so the court will not make it.

22       Plaintiff also alleges that his psoriasis was aggravated by his exposure to fecal-

23 contaminated water in the toilet bowl.  No evidence has been presented to support this

24 contention.  A letter from an Assistant Clinical Professor in the Department of Dermatology

25 of the University of California-Davis, dated April 26, 2001, states that plaintiff has

26 experienced extensive psoriasis.  Pl.'s Exhibits in Supp. of Opp. to Mot. Summ. J., ex. N at

27 1. The letter predates the matter at issue here, and indicates that in 2001, the psoriasis

28 was limited to plaintiff's scalp, face, ears and elbows, and that plaintiff denied any

involvement of his genital skin or his joints or nails. *Id.*

The only other evidence of injury offered by the plaintiff is the results of two abdominal sonograms, one in 1998 indicating no significant abnormality and one in 2006 indicating his spleen is "enlarged." *Id.* at ex. M. Plaintiff asks the court to infer that because "many diseases cause the spleen to enlarge (including hepatitis)" and his is enlarged, the backflushing caused his enlarged spleen. Opp'n to Mot. Summ. J. at 22, ¶ ¶ 74-75. He admits, however, that he does not know what caused his enlarged spleen, and he stated during his deposition that he plans "to investigate whether it was due to the prostate infection, the whatever other infection I had in April of 2004, combined with the Hepatitis and the stress of dealing with these conditions for almost two years." Holestine dep. at 93. He conceded, however, that the prostate infection was not caused by the blackflushing problem. *Id.* No reasonable juror could find, based on this evidence, that the backflushing problem caused his enlarged spleen.

Plaintiff having failed to provide any evidence that he suffered an illness caused by the backflushing problem, his bare allegations of injury cannot generate a genuine issue of material fact as to whether the situation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are merely inconvenienced or suffer de minimis or no injury. Although the court is sympathetic to what must have been an unpleasant and extremely annoying condition, in the absence of injury proximately caused the condition, it was not sufficiently serious to amount to a constitutional violation. *See, e.g., Hudson*, 503 U.S. at 9-10 (8th Amendment excludes from constitutional recognition de minimis uses of force). The motion for summary judgment is GRANTED.

## CONCLUSION

The claims against defendants McGrath and Vogt are **DISMISSED** without prejudice for failure to obtain service. *See* Fed. R.Civ.P. 4(m). Plaintiff's motion to strike (document number 40 on the docket) is **DENIED**.

For the foregoing reasons, defendants' motion for summary judgment (document number 32 on the docket) is **GRANTED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  September 27, 2007.

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\CR.04\HOLESTINE583.MSJ.wpd